## Harbison *v.* Hammons.

### Opinion delivered May 11, 1914.

1. BILLS AND NOTES—CONSIDERATION—ANTECEDENT DEBT.—The transfer of a negotiable instrument before maturity, in payment of an antecedent debt, is a sufficient consideration to constitute the purchaser a holder for value. (Page 123.)

2. BILLS AND NOTES—INNOCENT PURCHASER—BURDEN OF PROOF.—The burden is upon the maker of a note to show that the holder had notice of the fraudulent procurement of the note. (Page 123.)

3. BILLS AND NOTES—FRAUD AS DEFENSE—VALUE—BURDEN OF PROOF.— Where, in an action on a promissory note, the defense is made that the execution of the note was procured by fraud, the burden is on the plaintiff to show that value was given for the note. (Page 123.)

4. BILLS AND NOTES—INNOCENT PURCHASER FOR VALUE—BURDEN OF PROOF. In an action on a promissory note, when the holder thereof shows himself to be a holder for value, the burden is then shifted back to the makers of the note to show that the holder had notice of the fraudulent procurement of the note at the time he purchased it. (Page 124.)

5. APPEAL AND ERROR—INSTRUCTION—FAILURE TO EXCEPT.—A party can not complain that the court did not give an instruction on a matter which the court held was not an issue in the case, and to which ruling no objection was made. (Page 125.)

6. CIRCUIT COURT—JURISDICTION—AMOUNT.—Where one M. was made a party defendant to an action on a note in the circuit court, and judgment was asked against her in the sum of $73.34, the amount is below the jurisdiction of the circuit court, and the circuit court is without jurisdiction as to M. (Page 126.)

7. BILLS AND NOTES—INTEREST AFTER JUDGMENT.—Where a note stipulated that it bear interest at the rate of 10 per cent per annum, without stipulating for interest after maturity, it will bear 10 per cent interest from date until maturity and 6 per cent interest thereafter. (Page 126.)

8. APPEAL—ERROR—COSTS.—Costs will not be awarded on the reversal of a judgment where the error would have been corrected on motion of appellant, in the trial court. (Page 127.)

Appeal from Clay Circuit Court, Western District, *W. J. Driver,* Judge; reversed in part; affirmed in part.

STATEMENT BY THE COURT.

This is an action upon a promissory note by J. W. Hammons against J. H. Harbison and Minerva Harbison and G. L. Lynch. The defendants filed an answer in which they denied that Hammons was the owner of the note sued on. They alleged that the note was procured by the fraudulent representations of Johnson & Jarrett, the payees, and alleged that Hammons was not a *bona fide* purchaser for value before maturity of the note. The note was introduced in evidence by the plaintiff's attorney. It bears date of November 12, 1908, and it is due and payable ten months after date to the order of Johnson & Jarrett, and is signed by the defendants.

J. C. Jarrett testified that the note was executed by the defendants and was given for the premium of a policy of life insurance in the St. Louis National Insurance Company issued upon the life of J. H. Harbison; that he and Johnson, the other payee in the note, were the local agents of the company and procured the application of Harbison for the policy of insurance; that the plaintiff, J. W. Hammons, was the State agent of said company, and that the note sued on was transferred by Johnson & Jarrett to Hammons not later than February, 1909, in payment of certain indebtedness owed by them to Hammons; that at the time the note was transferred to Hammons the latter did not have any knowledge that there was any defense to the note.

The defendant, J. H. Harbison, testified, in effect, that the note was procured by Johnson & Jarrett by means of fraudulent representations. In rebuttal, Jarrett denied that the note had been procured by means of fraudulent representations, and stated that it was given to pay the premium upon a policy of life insurance upon the application of J. H. Harbison therefor.

Other facts will be referred to in the opinion. The jury returned a verdict for the plaintiff against all the defendants, and the case is here on appeal.

*G. B. Oliver,* for appellant.

1. The verdict is without evidence to support it. (a) The note sued on bears not only the endorsement of Johnson & Jarrett, but also that of J. W. Hammons, the appellee, in which is *prima facie* proof that he is not the owner.

That a plaintiff has transferred the note, or has parted with his interest, is a good defense. 8 Cyc. 60; 5 Ark. 93.

(b) The answer alleges that the note was obtained by fraud, and appellant's testimony supporting this allegation is nowhere contradicted.

(c) The court had no jurisdiction of the case stated against Mrs. Harbison, and the judgment against her is void, and would have been void if it had been confined to the amount for which judgment was asked against her.

2. The court erred in its charge on the question of fraud. The burden falls on him who asserts fraud, to establish it *by a preponderance of the evidence.* 20 Cyc. 108-J; 9 Cyc. 762 (13), and cases cited; 78 Ark. 87.

3. The court erred in refusing to charge the jury to find for the defendants, if they found that the note had been altered by adding the words "10 per cent per annum, since its execution and without defendants' permission. 49 Ark. 40; 57 Ark. 277.

*R. P. Taylor* and *J. L. Taylor,* for appellee.

1. The undisputed testimony shows the endorsement and delivery of the note to appellee before maturity and for value.

Mrs. Harbison was originally sued for the full amount of the note. The fact that she may not have been liable for the full amount would not determine the jurisdiction, the criterion for which is fixed by the plaintiff's claim. 44 Ark. 100.

2. The court's instruction on the question of fraud was correct. The burden is on him who alleges fraud to prove it by clear and satisfactory evidence. 92 Ark. 518.

HART, J., (after stating the facts). It is first insisted that there is no evidence to warrant the verdict, but we

do not agree with counsel in this contention. The note was introduced in evidence by the plaintiff's attorney. It bore date of November 12, 1908, and was payable to Johnson & Jarrett ten months after date. Jarrett testified that, not later than February, 1909, the note was transferred to the plaintiff in payment of an indebtedness owed by Johnson & Jarrett to him. His testimony in this respect is not attempted to be contradicted. The transfer of a negotiable instrument before maturity, in payment of an antecedent debt, is a sufficient consideration to constitute the purchaser a holder for value. *Southern Sand & Material Co.* v. *Peoples Savings Bank & Trust Co.,* 101 Ark. 266; *Miles* v. *Dodson,* 102 Ark. 422. Jarrett also testified that at the time the note was assigned to Hammons the latter did not have any notice that there was any defense to the note. If it be said that Jarrett's testimony on this point is not undisputed because he was contradicted in regard to his statement that the note was not procured by fraud, still the burden of proof was upon the defendants to show that the plaintiff had notice of the fraudulent procurement of the note. Where, in an action on a promissory note, the defense is made that the execution of the note was procured by fraud, the burden is on the plaintiff to show that value was given for the note. *Tabor et al.* v. *Merchants National Bank,* 48 Ark. 454. The reason assigned for this rule is that "where there is fraud the presumption is that he who is guilty will part with the note for the purpose of enabling some third party to recover upon it, and such presumption operates against the holder, and it devolves upon him to show that he gave value for it." But when such payment is shown, it devolves upon the defendant to prove that plaintiff purchased with notice, actual or constructive, that the execution of the note was procured by fraud. *Bank of Monette* v. *Hale,* 104 Ark. 388; *Old National Bank of Fort Wayne* v. *Marcy,* 79 Ark. 149. The rule is that the plaintiff must show himself to be a holder for value, and, on having done so, the burden is then shifted back to the makers of the note to

show that plaintiff had notice of the fraudulent procurement of the note at the time that he purchased the paper. The reason is that the facts which constitute the fraud are, for the most part, affirmative in their nature, and must be set up by the defendants as a defense to the action on the note. Therefore, the burden of proof is upon them to establish their defense.

Mr. Daniel, after approving the rule as announced above, said: "This principle is obviously correct, for to require the plaintiff to show absolutely that he had knowledge of facts would be to burden him with the necessity of proving an impossible negative. He makes out a *prima facie* case by proving that the instrument was endorsed to him for value before maturity. Nothing else appearing, a presumption arises that he purchased the note in good faith without notice of fraud, because it is not likely that he would give full value for a note which he believed to be fraudulent, taking the hazard upon himself, and because it would be difficult to prove good faith in any better way." Daniel on Negotiable Instruments (6 ed.) vol. 1, § 819; *Commercial Bank of Danville* v. *Burgwyn et al.* (N. C.), 17 L. R. A. 326.

Again, it is contended by counsel for defendants that the court erred in instructing the jury as to the amount of proof necessary to establish fraud in the procurement of the note; but we need not determine this assignment of error. As we have already seen, the plaintiff proved that he was a purchaser for value before maturity of the note. The burden of proof was then cast upon the defendants to show that the plaintiff had notice that the note was procured by fraud. The defendants made no effort whatever to establish this fact. If it be held that the testimony of Jarrett to the effect that the plaintiff did not have notice of any fraud in the procurement of the note was not undisputed because his testimony in other respects was contradicted by that of the defendant, J. H. Harbison, this contradiction to his testimony would not be affirmative proof that the plaintiff had notice that the note was procured by fraud. . The burden

being upon the defendants to establish that fact, and no effort having been made by them to do so, it becomes immaterial whether or not the court erred in instructing the jury as to the amount of proof that would be necessary to show that the note was procured by the fraudulent representations of Johnson & Jarrett, for this issue passed out of the case when the defendants failed to show that the plaintiff had notice of the fraudulent procurement of the note.

It is next urged by counsel for defendants that the court erred in refusing to instruct the jury that if it should find that the note had been altered by adding the words "10 per cent per annum" since its execution, without permission from the maker, it should find for the defendants. This instruction was abstract. Therefore, the court properly refused to give it. J. H. Harbison testified that he could not read and write. He did not state that the words "10 per cent per annum" were added to the note after its execution. He only stated that the words "10 per cent per annum" were not mentioned when the note was read to him before he signed it. The court, when this testimony was introduced, held that it could only be considered competent insofar as it tended to prove fraud in the procurement of the note. His ruling in this respect was not excepted to by the defendants, and the action of the court in thus limiting the testimony was not made one of the grounds of the motion for new trial. In addition, the testimony of Jarrett shows that the words were in the note when it was signed by the defendants, and that they were not added there afterward. The defendant can not complain that the court did not give an instruction on a matter which the court held was not an issue in the case, and to which ruling no objection was made.

The defendant, Minerva Harbison, was the wife of J. H. Harbison. She was not made a defendant to the original complaint filed in this action. Subsequently an amendment to the complaint was filed by the plaintiff in which she was made a party defendant, and judgment

was asked against her in the sum of $73.34. The case was instituted in the circuit court, and the amount for which Mrs. Harbison was sued not being within the jurisdiction of the court, the judgment against her is void, and will be reversed and the cause of action against her dismissed.

The judgment against the defendants, J. H. Harbison and G. L. Lynch, will be affirmed.

### ON REHEARING.

HART, J. Counsel for appellants has called our attention to the fact that the court over his objection gave the following instruction: ''If you find for the plaintiff against both defendants, your verdict will be for amount of note sued on together with 10 per cent interest from date to present time.''

The court erred in giving this instruction. The note stipulated that it should bear interest at the rate of 10 per cent per annum without stipulating for interest after maturity. Therefore, it bears interest at the rate of 10 per cent per annum from date until maturity, and thereafter at 6 per cent. *Johnson* v. *Downing,* 76 Ark. 128, and cases cited. Therefore, the judgment will be modified in accordance with this opinion.

It does not follow, however, that appellant should be entitled to the costs of appeal. The rule in regard to interest announced above has been established by many decisions of this court, extending over a long period of time. The action of the court in giving the instruction in regard to the interest was not a material issue in the case, and only arose as incidental to the other issues involved. Therefore, it may be regarded as an inadvertence, or oversight, on the part of the court in the nature of a clerical error. If counsel for appellant had specifically called the court's attention to the instruction and had pointed out the error in it, the court doubtless would have corrected it. In other words, counsel should have made a specific objection to the instruction, or, in his motion for a new trial, should have specially called the

court's attention to the mistake, and, not having done so, appellant will not be allowed to recover the costs of appeal. It has been held that costs will not be awarded on reversal of the judgment where the error could have been corrected on motion in the trial court without appeal. 11 Cyc. 209.