No. 30,457.

COLUMBIA NATIONAL BANK, *Appellant,* v. AMELIA STINE, *Appellee.*

(12 P. 2d 814.)

Opinion filed July 9, 1932.

*Thomas E. Joyce,* of Kansas City, *George K. Brasher* and *Guy M. Boyer,* both of Kansas City, Mo., for the appellant.

*J. O. Emerson* and *D. J. Smith,* both of Kansas City, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: This is an action on a promissory note to recover a balance of $135 with interest where the note was regularly indorsed to the plaintiff bank as collateral security. The plaintiff was found by the jury to be a holder in due course, having acquired it before maturity, but the general verdict was for the defendant and judgment was accordingly rendered for the defendant, from which the plaintiff appeals, urging particularly that instruction No. 7 given by the court was erroneous and a misstatement of the law applicable to the case.

The case was commenced in the city court and no formal answer has been filed by defendant, but an affidavit was filed by the defendant in the city court denying the execution of the note and the indorsement thereof to the plaintiff. In the district court the defendant admitted signing a contract for the installation of a thermostat equipment and had no recollection of signing any note. Her evidence tended to show the equipment was not as represented, and she attempted to show fraudulent conduct on the part of J. T. Thurman

Company, to whom the note attached to the bill of particulars was given.

The evidence shows four payments were made on the contract or note and that the note was indorsed by J. T. Thurman Company to the plaintiff bank on November 13, 1928, about three weeks after it had been given by the defendant. It provided for monthly payments until July 20, 1929. It and other notes to the amount of $1,206.35 were indorsed by the Thurman Company to plaintiff bank as collateral security for a $950 note of J. T. Thurman Company given November 13, 1929, to the plaintiff bank. The Thurman Company note was frequently renewed for smaller amounts, giving credit thereon for collections made on the collateral notes. On October 12, 1929, when the amount of this original indebtedness of $950 had been reduced to $198.36, it was combined with other notes of the Thurman Company and a new note given for $1,441.86, and this collateral note and others with it were held as collateral security for the new enlarged note. At this time the note here under consideration was past due for nearly three months. The Thurman Company new note was frequently renewed thereafter, and at the time of the commencement of this action it was reduced to $265, and the collateral security remaining uncollected consisted of this note of $135 and another of $98, making a total of $233. The evidence shows that all the original collateral notes deposited with the $950 note, totaling $1,206.35, have been collected except these two amounting to $233, which shows that $973.35 has been collected by the bank, which more than pays the original note of $950. The assistant cashier of the plaintiff bank in cross-examination admitted such to be the case, but plaintiff claims it is still entitled to collect on this collateral security after the satisfaction of the original note in order to pay the subsequent note for which the collateral has been held over as security, notwithstanding the note in suit was long past due when it was taken over as security for this subsequent indebtedness and notwithstanding the defendant claims it was procured by fraud.

The instruction of which appellant complains was in effect that if you find from the evidence "that enough has since been collected by the plaintiff on said $1,206.35 worth of notes to fully pay off said original indebtedness of $950, then you are instructed that the interest of the plaintiff bank in said note has ceased as a holder in due course . . ." We think this is a correct statement of the law

applicable to this case, and we find nothing in the cases cited by appellant to the contrary. Where a bank is in due course an innocent holder of a negotiable promissory note accepted before maturity as collateral security on a note given by the indorser of such collateral security to the bank for a valuable consideration, and there are equitable defenses between the maker and payee of such collateral note, and the bank collects from this and other collateral security pledged for the original indebtedness the full amount of such original indebtedness, the bank cannot thereafter recover from the maker of the collateral note for subsequent indebtedness of the indorser by taking the same note and holding it over as collateral security after its maturity.

"Where negotiable promissory notes, pledged to an innocent holder to secure a preëxisting debt due from the payee to the pledgee, are subject to equitable defenses as between the maker and payee, and are of a greater amount than the preëxisting debt, the recovery of the pledgee against the maker is limited to the amount of the preëxisting debt." (*State Bank v. Blevins*, 46 Kan. 536, syl., 26 Pac. 1044.)

"And if a note is valid between the original parties, an indorsee who holds it as collateral may recover the face thereof, with accrued interest, retaining any surplus as trustee for the party benefically entitled thereto, after his own claim is satisfied; but, if the note is invalid between the immediate parties, one who holds it as collateral security may recover only the amount of his claim to which the note is collateral. . ." (3 R. C. L. 1061.)

"However, if the debt secured is afterward paid, the pledgee loses his character as a holder for value." (8 C. J. 488. See, also, *Cedar Rapids Savings Bank v. Zeff*, 119 Kan. 539, 240 Pac. 840; *Bank of Claflin v. Rowlinson*, 2 Kan. App. 82, 43 Pac. 304.)

The defendant introduced evidence tending to show fraud in the inception of the note or contract, but no notice or knowledge of such was shown to have reached the plaintiff, and the jury found the plaintiff to be an innocent holder in due course when it took the note before maturity. After maturity the plaintiff stands in no better position than J. T. Thurman Company except for the balance of the original indebtedness of $950.

Appellant refers to a decision where collateral security was reciprocally furnished by two banks for "fluctuating balances." We do not regard this as a similar situation.

Appellant complains of the use of the words "slick trick" by attorney for defendant in the argument to the jury as applied to the conduct of Thurman Company in getting this note into the hands of the nonresident plaintiff bank, as being misconduct of counsel

and prejudicial with the jury. The only possible justification of the use of these words might be in connection with the attempt to show fraud on the part of Thurman Company, which was one of the defenses, and in that connection they would not necessarily be improper.

Other errors assigned, including the overruling of the motion for judgment on the answers to the special questions and the overruling of the motion for a new trial, considered and held not error.

The judgment is affirmed.